**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9      IN THE UNITED STATES DISTRICT COURT

10      FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   EDWARD L. WILKERSON,                    No. C 06-1259 CW

13          Plaintiff,                       ORDER GRANTING
                                             PLAINTIFF'S
14      v.                                   MOTION FOR REMAND
                                             IN PART; DENYING
15   JO ANNE B. BARNHART, Commissioner,      PLAINTIFF'S
     Social Security Administration          SUMMARY JUDGMENT
16                                           MOTION; AND
            Defendant.                       GRANTING
17                                           DEFENDANT'S
     _____/       CROSS-MOTION FOR
18                                           SUMMARY JUDGMENT
                                             IN PART
19

20        Plaintiff Edward L. Wilkerson has filed a motion for summary

21   judgment or remand.  Defendant Jo Anne B. Barnhart, in her capacity

22   as Commissioner of the Social Security Administration

23   (Commissioner), opposes this motion and cross-moves for summary

24   judgment.  Having considered all of the papers filed by the

25   parties, the Court GRANTS Plaintiff's motion to remand to accept,

26   or give proper reasons for rejecting, Plaintiff's subjective pain

27   testimony and to pose a proper hypothetical to the vocational

28   expert.

BACKGROUND

Plaintiff Edward L. Wilkerson first filed for Social Security disability insurance benefits under Title II of the Social Security Act on August 17, 2001, alleging disabling back pain that began after a workplace accident on September 20, 2000.  On November 21, 2001, this claim was denied and Plaintiff did not file an appeal. On May 1, 2003, Plaintiff filed a second application for disability benefits under Title II alleging disabling back pain due to the same injury.  Plaintiff's second claim was denied initially and again upon reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which took place on March 22, 2005.  On April 14, 2005, the ALJ issued his decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and was able to perform jobs existing in significant numbers in the national economy.  On June 10, 2005, Plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision.  On January 20, 2006, the Appeals Council denied Plaintiff's request and the ALJ's decision became the final decision of the Commissioner.

STATEMENT OF FACTS

I.   Plaintiff's Education and Work Experience

Plaintiff was born on August 3, 1959.  Transcript (Tr.) at 197.  He has an eleventh grade education.  Tr. at 133.  Plaintiff has been engaged in carpentry-type work since he was eighteen.  Tr. at 172.  He was employed as a carpenter by Exxon Refinery/GSI for five years, with Gillis Construction Company for two years, and then with Creative Kitchens and Remodeling from 1999 until his

2

injury on September 20, 2000, at which time he ceased all work activity.  Id.  At Creative Kitchens and Remodeling, Plaintiff performed general carpentry duties involving operating a back hoe, frequent bending, lifting, and working with various hand tools. Tr. at 172, 228.  "Twenty years ago," Plaintiff suffered a work-related injury in which a nail entered his right eye, which various doctors have described as leaving him "blind," with "vision loss," or with "residual blurred vision" in the right eye.  Tr. at 171, 224, 230, 241, 330.

II.  Plaintiff's Medical History

On September 20, 2000, Plaintiff fell eleven to twelve feet when a board he was leaning on gave way.  Tr. at 228, 351.  He struck his head and landed on his back.  Id.  Initial radiologic tests indicated mild degenerative changes to the cervical, lumbar, and thoracic spines.  Tr. at 179-182.  Plaintiff was diagnosed with chronic cervical, thoracic, and lumbar sprains and was treated conservatively with physical therapy, pain medication, and chiropractic manipulation.  Tr. at 175, 177, 184-185, 201. Plaintiff also received a series of cervical and lumbar epidural injections to treat his post-traumatic headaches.  Tr. at 212-213, 284.  From February, 2001 through November, 2004, Plaintiff was treated by chiropractors Paul Anderson, D.C., and Eric Anderson, D.C., who completed a number of workers' compensation disability forms for Plaintiff indicating that he was temporarily totally disabled and precluded from his prior work as a carpenter.  Tr. at 258-280, 302-304.

On September 6, 2001, Plaintiff consulted with orthopedic

surgeon Kenneth Light, M.D., who diagnosed him with degenerative changes of the lumbar spine and possible injury to the cervical spine.  Tr. at 256-257.  On July 11, 2002, Dr. Light recommended that Plaintiff have surgery to fuse his spine from L4 to S1.  Tr. at 255.  On August 19, 2002, Plaintiff underwent the two-stage, anterior and posterior fusion surgery.  Tr. at 228, 249, 329. Plaintiff reported complete pain reduction after the surgery, but experienced a recurrence of his low back pain eight months later. Tr. at 223-224, 329.

On September 4, 2003, neurologist Frederic Newton, M.D., examined Plaintiff as an agreed medical examiner for workers' compensation purposes.  Tr. at 227.  In his report dated October 1, 2003, Dr. Newton diagnosed Plaintiff with degenerative disk disease of the cervical spine with cervical strain, degenerative disk disease of the lumbar spine with lumbar strain, status post-fusion at L4 to S1, with chronic myofacial pain, mild bilateral carpal tunnel syndrome and post-traumatic headaches.  Tr. at 235.  Dr. Newton opined that Plaintiff's condition was permanent and stationary and that he could perform a range of work at the light exertional level with a preclusion from repetitive forceful gripping.  Tr. at 235, 322.  On September 18, 2003, Dr. Light examined Plaintiff and found normal sensory, motor, and deep tendon reflexes, but couldn't conclude whether Plaintiff's spine was completely healed from the fusion surgery.  Tr. at 250.

On September 27, 2003, orthopedist Robert Wechsler, M.D., examined Plaintiff at the request of the Social Security Administration.  Tr. at 223.  Dr. Wechsler reviewed Dr. Light's

4

post-surgical evaluations of Plaintiff.  Id.  Dr. Wechsler reported

normal sensory, motor and deep tendon reflexes.  Tr. at 225.  He

opined that Plaintiff could perform a range of work at the light

exertional level, including standing, sitting, and walking for up

to six hours in an eight-hour work day, and lifting and carrying

twenty pounds occasionally, and ten pounds frequently, with

postural limitations in the ability to bend, stoop, and crouch.

Tr. at 226.  On October 21, 2003, Disability Determination Services

(DDS) medical advisor Patrick Bianchi, M.D., reviewed Plaintiff's

medical records and concluded that a "[l]ight RFC[1] appears

reasonable."  Tr. at 244.

On November 13, 2003, Dr. Light questioned whether Plaintiff's

spine was solidly healed and opined that "according to the Spine

and Torso Guidelines at this point [Plaintiff] would be 100%

disabled" because Plaintiff's "pain is such that he is not able to

sit for more than 20 minutes at a time, stand, bend, or lift."  Tr.

at 249.  On January 8, 2004, Dr. Light opined that Plaintiff's

spine appeared to be healing in the correct anatomical position.

On February 18, 2004, Dr. Bianchi reviewed Plaintiff's medical

records again and concluded that Plaintiff was capable of light

work.  Tr. at 297.  On May 27, 2004, Dr. Light reported a normal

neurological examination of Plaintiff and found that Plaintiff's

spinal fusion was solid and in anatomic position with no evidence

of nerve root impingement.  Tr. at 306.  At this time, Plaintiff

reported to Dr. Light that despite his ongoing back pain, he was

---

[1] Residual Functional Capacity, discussed below.

"off all pain medication." Id. Dr. Light recommended that Plaintiff be treated with "medication and exercise," and prescribed him two pain relievers. Id. On July 8, 2004, Dr. Light re-examined Plaintiff and reported that Plaintiff had a greater range of neck movement and opined that Plaintiff had been permanent and stationary since November 13, 2003. Tr. at 325.

On September 30, 2004, Dr. Light suggested that Plaintiff's condition might be improved by the removal of the pedicle screws and rods installed in Plaintiff's previous surgery. Tr. at 324. On October 6, 2004, Plaintiff was examined for workers' compensation purposes by pain specialist Dr. Leslie Schofferman, who opined that he was temporarily totally disabled, until the outcome of the recommended hardware removal. Tr. at 329. On October 18, 2004, Dr. Newton was asked to re-evaluate Plaintiff's condition for workers' compensation purposes in light of diagnostic tests performed on May 26, 2004. Tr. at 338-339. Dr. Newton reiterated his opinion that Plaintiff's condition remained unchanged since September 4, 2003, and that Plaintiff had constant slight pain in the spine and was capable of light work with a preclusion from repetitive forceful gripping.[2] Tr. at 339. On December 23, 2004, Plaintiff requested that Dr. Light remove the

_____

[2] Although Dr. Newton's October 18, 2004, opinion actually states that "[t]here are preclusions from Light Work and Repetitive Forceful Gripping," it seems clear from the tenor of the document that this phrasing is an error and that Dr. Newton is merely repeating his conclusions from his report dated October 1, 2003, in which he opined that "[t]here is an overall level of permanent partial spinal disability that limits [Plaintiff] to Light Work" and "it would be reasonable to preclude repetitive forceful gripping bilaterally." Tr. at 235, 339.

United States District Court
For the Northern District of California

hardware because of his continued back pain related to changes in the weather.  Tr. at 345.  On January 4, 2005, Dr. Light performed the elective surgery, removing the rods and screws from Plaintiff's spine.  Tr. at 344, 346.  There were no complications.  Tr. at 344.

III. Plaintiff's Testimony

On March 22, 2005, Plaintiff testified at his hearing before the ALJ that he had not worked since September 20, 2000, and suffered from headaches, and low back and neck pain.  Tr. at 351, 354-356.  He reported that for eight months after his fusion surgery his back pain improved until he was walking one day and experienced a sharp pain in his lower back.  Tr. at 353.  Otherwise Plaintiff reported consistent headaches, low back and neck pain, and occasional leg pain, from the time of his accident to the present.  Tr. at 353-357.  He testified that his prior eye injury caused a vision problem, but that it had not limited him in any way.  Tr. at 360.

Between his first surgery in 2002 and his second surgery in 2005, Plaintiff reported that he would walk the length of his driveway, which is seventy-five yards long, up to six times a day before the post-surgery pain recurred, and twice a day after that. Tr. at 357-358.  He also reported that during this period he could not bend over at all, could not sit in a "dinner table" type of chair for more than thirty minutes, could not lift more than ten pounds, but could stand for an hour and a half at a fishing tournament.  Tr. at 357, 358, 360, 367.  Plaintiff stated that since his hardware removal surgery in 2005, his condition is the "basically the same" as it has been since 2003, when his pain

United States District Court
For the Northern District of California

recurred after his first surgery.  Tr. at 363.

Plaintiff testified that he can walk until his "body tells him to stop," go to the grocery store to do light shopping, drive up to an hour at a time without pain, wash a handful of laundry, and squat to pick up a twelve pack of soda or a gallon of milk.  Tr. at 358, 359, 363-364.  He reported that he fishes a little and went out on his boat recently.  Tr. at 368.  He cannot launch the boat by himself and cannot go out when the water is choppy because it aggravates his back.  Tr. at 368-369.  Plaintiff mostly spends his days watching television and walking.  Tr. at 365.  He lives with his mother who, together with his fiancé, does most of the housework and cooking.  Tr. 365.  Plaintiff reported that, currently, he has a debilitating migraine headache approximately twice a week, for which he takes medication.  Tr. at 355-356.  He does not believe that there has been a time since his accident that he could return to work, and does not think that there is any type of work he could do in the future.  Tr. at 366.

IV.   The ALJ's Findings

In his decision dated April 14, 2005, the ALJ found no good cause for reopening Plaintiff's August 17, 2001, application for a period of disability.  Tr. at 20.  With respect to Plaintiff's present application, the ALJ found that Plaintiff has not performed any work since September 20, 2000, the date of his accident.  Tr. at 22.  The ALJ found that Plaintiff had the severe impairments of degenerative disk disease of the lumbar spine with lumbar strain, and status post-fusion of L4-S1, with chronic low back and neck pain.  Id.  The ALJ found insufficient medical evidence to support

United States District Court
For the Northern District of California

any other severe impairments.  _Id._  He found that Plaintiff's medically determined impairments did not meet or equal any listed impairments in Appendix 1 to Subpart P of Social Security Regulation No. 4.  _Id._  As a result, the ALJ proceeded to determine Plaintiff's residual functional capacity (RFC) to perform past relevant work or, considering his vocational profile, consisting of his age, education, and past work experience, and his RFC, whether Plaintiff could perform other work that exists in significant numbers in the national economy.  _Id._

The ALJ determined that Plaintiff had an RFC for a range of work at the light exertional level with the ability to sit for up to twenty minutes without a change of position, the ability to occasionally rotate the neck, and a preclusion from forceful gripping and lifting objects from floor level.  _Id._  In formulating this RFC, the ALJ gave the most weight to Dr. Wechsler's September, 2003 opinion, which he found consistent with Dr. Newton's October, 2003 opinion and the October, 2003 and February, 2004 opinions of DDS medical advisor Dr Bianchi.  Tr. at 22-23.  The ALJ gave little weight to Dr. Light's November, 2003 opinion that Plaintiff was "100% disabled" because it was inconsistent with the other medical evidence, including Dr. Light's own July, 2004 opinion that Plaintiff was permanent and stationary since November 13, 2003, and because Dr. Light was offering a vocational opinion outside his area of expertise.  Tr. at 23.  The ALJ also gave little weight to the opinions of chiropractors Paul Anderson and Eric Anderson because they offered vocational opinions and because chiropractors are not acceptable medical sources under 20 C.F.R. § 404.1513.  _Id._

9

**United States District Court**
For the Northern District of California

The ALJ found Plaintiff's testimony regarding his inability to work due to low back and neck pain not fully credible due to its inconsistency with the medical evidence and Plaintiff's own testimony regarding his daily activities.  <u>Id.</u>  The ALJ found Plaintiff's testimony as to his daily activities indicative of a capacity to work at the RFC he had determined.  <u>Id.</u>

The vocational expert (VE) testified that Plaintiff's past relevant work as a general carpenter was skilled and performed at the medium, and occasionally heavy, exertional level.  Tr. at 23, 372.  The VE testified that a hypothetical person with Plaintiff's vocational profile and RFC could not perform Plaintiff's past relevant work.  Tr. at 24.  However, the VE testified that such a person could perform the unskilled jobs of Bench Assembler (light) and Final Assembler (optical).  <u>Id.</u>  The ALJ credited the VE's testimony and concluded that jobs that Plaintiff could perform exist in significant numbers in the national economy.  <u>Id.</u>  Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act based upon Plaintiff's application filed on May 1, 2003.  <u>Id.</u>

LEGAL STANDARD

I.   Overturning a Denial of Benefits

A court cannot set aside a denial of benefits unless the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989); <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.   Richardson v. Perales, 402 U.S. 389, 401 (1971); Orteza v. Shalala, 50 F.3d 748, 749 (9th Cir. 1995).   It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

To determine whether substantial evidence exists to support the ALJ's decision, a court reviews the record as a whole, not just the evidence supporting the decision of the ALJ.   Walker v. Matthews, 546 F.2d 814, 818 (9th Cir. 1976).   A court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.   Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).   In short, a court must weigh the evidence that supports the ALJ's conclusions and that which does not.   Martinez, 807 F.2d at 772.

If there is substantial evidence to support the decision of the ALJ, it is well-settled that the decision must be upheld even when there is evidence on the other side, Hall v. Secretary, 602 F.2d 1372, 1374 (9th Cir. 1979), or when the evidence is susceptible to more than one rational interpretation, Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).   If supported by substantial evidence, the findings of the ALJ as to any fact will be conclusive.   42 U.S.C. § 405(g); Vidal v. Harris, 637 F.2d 710, 712 (9th Cir. 1981).

II.   Establishing Disability Under the Social Security Act

Under the Social Security Act, "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

United States District Court
For the Northern District of California

expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A). The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(2)(A). In addition, the impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled within the meaning of the Social Security Act, the Social Security Regulations set out a five-step sequential process. 20 C.F.R. § 404.1520 (b)-(f); Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991); Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The burden of proof is on the claimant in steps one through four. Sanchez v. Secretary of Health and Human Servs., 812 F.2d 509, 511 (9th Cir. 1987). In step one, the claimant must show that she or he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). In step two, the claimant must show that he or she has a "medically severe impairment or combination of impairments" that significantly limits his or her ability to work. 20 C.F.R. § 404.1520(c); Bowen v. Yuckert, 482 U.S. 137, 140 (1987); Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not, he or she is not disabled. Otherwise, the process continues to step three for a determination of whether the impairment meets or equals a "listed" impairment which the regulations acknowledge to be so severe as to preclude substantial gainful activity. Yuckert, 482 U.S. at 141;

12

United States District Court
For the Northern District of California

20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1.  If
this requirement is met, the claimant is conclusively presumed
disabled; if not, the evaluation proceeds to step four.  At step
four, it must be determined whether the claimant can still perform
"past relevant work."  <u>Yuckert</u>, 482 U.S. at 141; 20 C.F.R.
§ 404.1520(e).  If the claimant can perform such work, he or she is
not disabled.  If the claimant meets the burden of establishing an
inability to perform prior work, the burden of proof shifts to the
Commissioner for step five.  At step five, the Commissioner must
show that the claimant can perform other substantial gainful work
that exists in the national economy.  <u>Yuckert</u>, 482 U.S. at 141; 20
C.F.R. § 1520(f).

DISCUSSION

I.   Closed Period of Disability

     In his motion, Plaintiff does not argue that he disabled past
the date of his second surgery on January 4, 2005, but only that
the ALJ erred by not granting him a closed period of disability
from September 20, 2000, until either September 4, 2003, or January
4, 2005.  A "closed period of disability" can be granted to an
applicant whose disability has ended, if it persisted for a
continuous twelve month period.  <u>Myers v. Richardson</u>, 471 F.2d
1265, 1267 (6th Cir. 1972) (<u>citing</u> 42 U.S.C. § 416(i)(2)(D)) ("The
Act itself does not provide for a closed period of benefits.
However, we think it clear that such a closed period of benefits
may be awarded"); <u>see</u> <u>Moore v. Commissioner of Social Sec. Admin.</u>,
278 F.3d 920, 924 (9th Cir. 2002) (applying <u>Myers</u>).

     Plaintiff argues that the ALJ ignored evidence showing that

13

Plaintiff was disabled starting from his accident on September 20, 2000, and continuing until September 4, 2003, the first date Plaintiff was declared permanent and stationary, or, based on the opinions of Dr. Light and Dr. Schofferman, until his second surgery on January 4, 2005.  Plaintiff alleges that the ALJ gave undue weight to examining physician Dr. Wechsler's 2003 assessment in making his decision to deny Plaintiff a closed period of disability because Dr. Wechsler's report is "questionable" and does not consider Plaintiff's condition prior to 2003.  In response, Defendant argues that the ALJ properly weighed the medical evidence presented and that the Commissioner's previous November 21, 2001 opinion that Plaintiff was not disabled has a res judicata effect on any claim that he was disabled from September 20, 2000, through November 21, 2001, and requires a continuing presumption of non-disability from that point on.

The Court will analyze Plaintiff's claim during three separate periods: (1) from his accident on September 20, 2000, until the time his first claim was denied on November 21, 2001; (2) from the November, 2001 denial until his first surgery on August 19, 2002; and (3) from the first surgery until his second surgery to have the hardware removed on January 4, 2005.

A.   First Period: Res Judicata Effect of the November, 2001 Denial

"[T]he principle of res judicata should not be rigidly applied in administrative proceedings," but "[t]he Commissioner may . . . apply res judicata to bar reconsideration of a period with respect to which she has already made a determination, by declining

14

United States District Court
For the Northern District of California

to reopen the prior application." Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995). "[R]es judicata applies to findings and decisions on the merits which become final as a result of a claimant's failure to seek administrative review after notice of an adverse decision." Taylor v. Heckler, 765 F.2d 872, 876 (9th Cir. 1985). "Further, [the Ninth Circuit] has held that res judicata may apply even where the claimant never had a hearing, if the claimant has failed to pursue an appeal and has presented no new facts in a subsequent application to demonstrate that there may have been inadequate grounds to support a determination of non-disability on the previous application." Id.

"As a general matter, the Commissioner's refusal to reopen her decision as to an earlier period is not subject to judicial review." Lester, 81 F.3d at 827.

> Once a decision becomes administratively final, the Secretary's decision to reopen a claim is purely discretionary. Discretionary decisions are not "final decisions" within the meaning of section 450(g). Therefore, a refusal by the Secretary to reopen a previous decision is not a "final" decision subject to judicial review.

Taylor, 765 F.2d at 877 (internal citations omitted).

> There is an exception to the general rule that courts may not review the Commissioner's decision not to reopen, where the Commissioner considers "on the merits" the issue of the claimant's disability during the already-adjudicated period. Where such a de facto reopening occurs, the Commissioner's decision as to the prior period is subject to judicial review.

Lester, 81 F.3d at 827, fn. 3 (internal citations omitted).

The authority cited above supports Defendant's contention that the initial denial of Plaintiff's claim, left unappealed, operates as a final judgment and creates a res judicata effect on any

15

**United States District Court**
For the Northern District of California

disability claims for the period that was denied.  Because
Plaintiff did not appeal the November, 2001 denial, it became a
final decision of the Commissioner, with a preclusive effect on any
disability claim brought for that period.  Because Plaintiff's 2003
application presented no new facts pertaining to the September,
2000 through November, 2001 period, and neither the Commissioner
nor the ALJ reopened the 2001 denial by reconsidering any of the
merits of that decision, the denial of disability from September,
2000 through November, 2001 is unreviewable by this Court.
Therefore, Plaintiff's argument that the ALJ should have
reconsidered Plaintiff's disability from September, 2000 through
November, 2001 is without merit.

      B.    Second Period: Effect of the November, 2001 Denial on
            Plaintiff's claim until August 19, 2002.

Defendant asserts that the Commissioner's prior decision that
Plaintiff was not disabled from September, 2000 through November,
2001, which is now final, creates a rebuttable presumption that
Plaintiff is not disabled until Plaintiff proves his condition has
changed.  Although the prior decision does create a rebuttable
presumption that Plaintiff is capable of work, "[t]he
Commissioner's authority to apply <u>res judicata</u> to the period
subsequent to a prior determination is much more limited." <u>Lester</u>,
81 F.3d at 827.  In <u>Lester</u>, the Ninth Circuit stated:

    [A]n ALJ's finding that a claimant is not disabled
    "create[s] a presumption that [the claimant] continued to
    be able to work after that date."  The presumption does
    not apply, however, if there are "changed circumstances."
    An increase in the severity of the claimant's impairment
    would preclude the application of <u>res judicata</u> . . . In
    addition, the Commissioner may not apply <u>res judicata</u>
    where the claimant raises a new issue, such as the

existence of an impairment not considered in the previous application.

Id. at 827-828 (internal citations omitted).  Thus, the 2001 findings of non-disability create a presumption of continuing non-disability unless Plaintiff proves changed circumstances.

According to the medical records submitted by Plaintiff, his condition did not appreciably change from the time of his accident in September, 2000 until his spinal fusion surgery on August 19, 2002.  Plaintiff's recitation of the facts of his case states that he only saw two doctors, Jack Miller, M.D., and Michael Tran, M.D., during this period.  Id. at 12:4-12:17.  These records indicate Plaintiff's condition was stable, and in fact, Dr. Tran noted on December 19, 2002, that Plaintiff had no new complaints, and Dr. Miller expressly stated in his report of his July 18, 2002, examination of Plaintiff that his "impressions of [Plaintiff] remain unchanged."  Tr. at 202, 212.  Neither doctor indicated that Plaintiff was incapable of work.  Therefore, Plaintiff has not overcome the presumption that he was not disabled during the period beginning after the denial of his first claim in November, 2001, and ending before his first changed circumstance, his fusion surgery on August 19, 2002.

C.    Third Period: The ALJ Properly Weighed the Medical Evidence Presented

The third period was from Plaintiff's first surgery on August 19, 2002, until his second surgery on January 4, 2005.  Plaintiff argues that the ALJ's decision denying benefits for this period was not based on substantial evidence.  Plaintiff argues that the ALJ should have found him totally temporarily disabled at least from

17

August 19, 2002[3], through September 4, 2003, because Plaintiff's disability can be "logically inferred" in the absence of reports saying that he could work prior to Dr. Newton's opinion, on September 4, 2003, that he could.

This argument is not well-taken.  It is Plaintiff's burden to prove he was unable to work for a twelve month period due to a "disability within the meaning of the Social Security Act." Gallant, 753 F.2d at 1452; 42 U.S.C. § 1382c(a)(3)(A).  None of the records pertaining to Plaintiff's immediate post-surgery condition indicates he was unable to work and, in fact, all the doctors and Plaintiff himself agree that for eight months after the surgery he felt remarkably better.  Plaintiff's argument is belied by the fact that he reported substantial, near total, relief from pain for most of the period he now argues the ALJ should have found him disabled. Thus, the ALJ did not err by relying on medical records from the period immediately after Plaintiff's pain recurred.

In determining Plaintiff's RFC, the ALJ found Dr. Wechsler's September, 2003 opinion that Plaintiff had an RFC "for a range of work at the light exertional level with the ability to sit up to 20 minutes without change of position, the ability to occasionally rotate the neck and preclusion from forceful gripping and lifting objects from the floor level" consistent with the September, 2003 opinion of examining physician Dr. Newton, and the October, 2003 opinion of consulting DDS medical advisor Dr. Bianchi.  Tr. at 22-

---

[3]  Plaintiff actually argues that his disability began on September 20, 2000, but as discussed above, the earliest possible date to consider Plaintiff disabled is August 19, 2002.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

23.   The ALJ gave little weight to the November, 2003 opinion of treating physician Dr. Light that Plaintiff was "100% disabled." Id.   The ALJ based this finding on the fact that Dr. Light's opinion was inconsistent with the other medical evidence, including Dr. Light's later opinion in July, 2004.  He also found that Dr. Light was offering a vocational opinion outside his expertise, acting more as an advocate than a treating physician when he made that statement.   Id. (citing Mattney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992)).

As a general rule, the opinion of a treating doctor should be given more weight than the opinion of examining or consulting doctors.  Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). Where a treating physician's opinion is contradicted by another doctor, the Commissioner may reject the treating physician's opinion, but must provide "specific, legitimate reasons" supported by substantial evidence in the record for doing so.  Rodriquez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989); Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).  Where the opinion of a non-treating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.  Magallanes, 881 F.2d at 751.

The ALJ was incorrect in finding that Dr. Light's opinion was internally inconsistent.  Dr. Light's opinion on July 8, 2004, that Plaintiff had been "permanent and stationary" since November 13, 2003, is not inconsistent with his opinion that Plaintiff was "100%

disabled" on November 13, 2003.  However, the ALJ did not err in rejecting Dr. Light's conclusion that Plaintiff was "100% disabled."  Dr. Light's disability opinion was based on his finding during the November 13, 2003 exam that Plaintiff "is not able to sit for more than 20 minutes at a time, stand, bend or lift."  Tr. at 249.  Dr. Light's opinion that Plaintiff could not stand at all is directly contradicted by the rest of the medical evidence, and Plaintiff himself testified that during this period he could lift as much as ten pounds without a problem.  Tr. at 367.  In contrast, two weeks earlier, on September 27, 2003, Dr. Wechsler opined that Plaintiff could sit, stand, and walk for up to six hours in an eight hour period, and lift up to twenty pounds occasionally.  Tr. at 226.

Nonetheless, even if the opinions of Dr. Light and Dr. Wechsler were equally supported by substantial evidence, it is "solely the province of the ALJ to resolve the conflict." Magallanes, 881 F.2d at 751.  The ALJ rejected Dr. Light's disability conclusion, as well as that of examining physician Dr. Schofferman, in favor of the opinions of Dr. Wechsler, examining physician Dr. Newton, and consulting DDS medical advisor Dr. Bianchi.  Both Dr. Wechsler and Dr. Newton thought Plaintiff was capable of certain light work, and Dr. Bianchi reviewed these opinions and found them "reasonable."  Tr. at 226, 235, 244.  These opinions constitute substantial evidence.  See Magallanes, 881 F.2d at 751.  Therefore, the ALJ's decision was not legal error.

United States District Court
For the Northern District of California

II.   The ALJ Properly Concluded That Plaintiff Could Perform Work
      Requiring Light Repetitive Gripping

      Plaintiff argues that the ALJ committed legal error by
eliciting and then ignoring the VE's testimony that the jobs
recommended for him required repetitive gripping.  According to
Plaintiff, Dr. Newton stated that Plaintiff was precluded from
"repetitive gripping."  Defendant argues that Dr. Newton's opinion
was in fact that Plaintiff could perform gripping activities so
long as they were not "forceful," and that the VE testified that
the occupations of "bench assembler, 706684022" and "assembler of
optical goods, 713687018" required only light gripping.

      Plaintiff omits the word "forceful" from his description of
Dr. Newton's medical opinion.  Dr. Newton opined that "it would be
reasonable to preclude repetitive forceful gripping bilaterally."
Tr. at 235.  The testimony of the VE as to the type of gripping
involved in the jobs he recommended for Plaintiff was as follows:

      ALJ:  Would this gripping be, you said it would be
      repetitive, but would it require a forceful gripping?

      VE:  No.  We're talking about small objects.  That's why
      they're at the light and sedentary level.

      ALJ:  Okay.

      VE:  The most forceful would be probably using a
      screwdriver and exerting less than five pounds of forceful
      effort.

Tr. at 378.  Although stating he sometimes had problems with his
grip and the use of his hands due to carpal tunnel syndrome,
Plaintiff never testified to any problems with light repetitive
gripping and he points to no medical evidence contradicting the
VE's opinion that he could perform a job with light repetitive

gripping.   Therefore, it was not legal error for the ALJ to conclude that Plaintiff could perform the occupations of bench assembler and assembler of optical goods on the grounds that they require light repetitive gripping.

III. The ALJ's Decision as to Plaintiff's Credibility is Not Supported by Sufficient Evidence of Malingering.

Plaintiff argues that the ALJ did not cite evidence or clear and convincing reasons to support his disbelief of Plaintiff's subjective complaints.   Defendant argues that the ALJ's opinion as to Plaintiff's credibility was properly supported by the record.

A.   Legal Standard

As a threshold matter, for a claimant's subjective symptom testimony to be deemed credible, he or she "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"   Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (quoting Cotton v. Bowen, 799 F.2d 1402 (9th Cir. 1986). The "Cotton test" does not require a claimant to produce objective medical evidence of the pain itself, or its severity, but only evidence from which the pain alleged can be reasonable inferred. Smolen, 80 F.3d at 1282.

Once a claimant meets his or her burden, "the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupportable by objective evidence. Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be 'clear and convincing.'"   Lester, 81 F.3d at 834

United States District Court
For the Northern District of California

(quoting Swanson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989));
Smolen, 80 F.3d at 1281.  When judging the credibility of a
plaintiff's testimony, the ALJ must consider "all of the available
evidence" in analyzing the severity of the claimed pain.  SSR 88-
13.  Factors to be analyzed include: (1) the nature, location,
onset, duration, frequency, radiation, and intensity of any pain;
(2) precipitating and aggravating factors; (3) type, dosage,
effectiveness and adverse side effects of any pain medications; (4)
treatment, other than medication, for relief of pain; (5)
functional restrictions; and (6) the plaintiff's daily activities.
Id.; see Fair, 885 F.2d at 603; Osenbrock v. Apfel, 240 F.3d 1157,
1166 (9th Cir. 2001).  Medical evidence is still relevant in
determining the severity of a plaintiff's alleged pain and its
disabling effects.  20 C.F.R. § 404.1529(c)(2); Rollins v.
Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

    B.    Analysis

    The ALJ concluded that Plaintiff's "testimony [was] not fully
credible to the extent that his allegation of inability to work
because of low back pain and neck pain is inconsistent with the
medical evidence and opinion supporting [his] RFC."  Tr. at 23.
Plaintiff's medical records demonstrate a sufficient evidentiary
basis from which Plaintiff's subjective complaints of pain can be
reasonably inferred.  Because Plaintiff meets his burden under the
Cotton test, it was the ALJ's burden to cite to evidence of
malingering or to list "clear and convincing" reasons why
Plaintiff's reasonable pain complaints should be ignored.

    The ALJ's reason for rejecting Plaintiff's testimony was that

23

it was "inconsistent with the medical evidence" upon which the ALJ formulated Plaintiff's RFC.  Tr. at 23.  Among these cited inconsistencies was the ALJ's finding that Plaintiff's statement that Dr. Light told him he wasn't "healed yet" was not credible because Dr. Light opined on July 8, 2004, that Plaintiff had been permanent and stationary since November 13, 2003.  Tr. at 23.  Here, the ALJ appears to have confused which surgery Plaintiff and Dr. Light were referring to.  Plaintiff testified as follows:

> Attorney: You're still, your surgery was in January of this year.  Have you been back to see Dr. Light?
>
> Plaintiff: I seen him March 3rd.
>
> Attorney: Okay.  And what did he tell you on March 3rd?
>
> Plaintiff: The reason why I'm experiencing what I'm experiencing is because I'm not healed yet.

Tr. at 361.  Plaintiff stated that Dr. Light told him that he was not healed from his second surgery on January 5, 2005.  Thus, Dr. Light's comment on July 8, 2004, that Plaintiff's condition after his first surgery had been permanent and stationary since November 13, 2003, is not inconsistent with this testimony.

The ALJ found Plaintiff's testimony that he could not bend over due to pain between 2003 and 2004 inconsistent with unspecified "medical evidence and opinions."  Tr. at 23; 360.  The Court finds no such inconsistent medical evidence.  Instead, Dr. Wechsler's opinion suggested that Plaintiff was precluded from "bending, stooping, and crouching."  Tr. at 226.  Defendant argues that Dr. Newton's and Dr. Wechsler's opinions show that Plaintiff was capable of bending in late 2003.  Although neither doctor found Plaintiff's spine completely unable to bend, both noted during

United States District Court
For the Northern District of California

their examinations that Plaintiff's bending ability was restricted by one-third.  Tr. at 225, 230.  The fact that the doctors did not find Plaintiff totally immobile upon examination does not contradict his testimony that bending on his own during this period caused him debilitating pain.

The ALJ also relied on the fact that Plaintiff was not on pain medication at his May 27, 2004 examination with Dr. Light.  Although not taking pain medication can discredit a claimant's pain testimony, this appears to have been an isolated occasion.  During the same May 27, 2004 exam, Dr. Light prescribed two different pain killers.  Plaintiff reported being on pain medication at most other examinations, and at the time of the hearing before the ALJ.  Tr. at 224, 249, 251, 330, 367, 370-371.  Plaintiff also has a history of pursuing various non-pharmaceutical treatments to relieve his pain.

Finally, the ALJ found Plaintiff's daily activities were indicative "of a greater capacity for work activity than [Plaintiff] is willing to acknowledge," citing Plaintiff's walking, driving, standing at a fishing tournament, and watching television as inconsistent with the medical evidence and Plaintiff's pain testimony.  Tr. at 23.  Plaintiff testified that at the time of the hearing, he walked up and down his driveway until his "body tells [him] to not."  Tr. at 358.  He also testified that he stood at a fishing tournament for an hour and a half, over which time his pain steadily increased to the point that he had to leave and go to bed.  Tr. at 357.  As for driving, Plaintiff testified he could drive for a maximum of an hour, and for longer trips he must split the trip

up into two days.  Tr. at 363-364.  Plaintiff testified to watching television, but he never specified the manner in which he did it, whether sitting, standing, reclining, or lying down.  Tr. at 365. None of this is inconsistent with Plaintiff's pain testimony, and in fact, supports his subjective feeling that he is limited to all but minimal life activities due to his pain.

Thus, the ALJ does not cite clear and convincing reasons for rejecting Plaintiff's testimony.  Therefore, on remand the ALJ shall reconsider Plaintiff's subjective pain testimony.

IV.  The ALJ Erred by Not Including Plaintiff's Right-Eye
     Limitations in the Hypothetical to the VE

Plaintiff argues for the first time in his reply that the ALJ wrongly concluded that Plaintiff's lack of visual acuity in his right eye was unsupported by the record, and that the jobs recommended by the VE require "frequent near acuity."  In her sur-reply, Defendant concedes that the ALJ was mistaken in finding no medical support for Plaintiff's right-eye limitation, but argues nonetheless that Plaintiff has "no visual limitation."

"An ALJ must propound a hypothetical to a VE that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations."  Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001); see Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  "The hypothetical should be 'accurate, detailed, and supported by the medical record.'" Osenbrock, 240 F.3d at 1165.  "It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record."  Id.; Magallanes, 881 F.2d at

26

1   756-57.

2       Dr. Wechsler states that Plaintiff is "blind in the right

3   eye." Tr. at 224. Dr. Newton reports that Plaintiff has "vision

4   loss" in his right eye due to an injury. Tr. at 230. DDS medical

5   advisor Dr. Bianchi states that Plaintiff is "[b]lind in right eye

6   due to previous injury." Tr. at 241. Dr. Schofferman states that

7   Plaintiff has "some residual blurred vision." Tr. at 330. The

8   only mention the ALJ makes of Plaintiff's visual impairment is that

9   he finds Plaintiff's RFC for light work consistent with the

10  "additional postural and visual limitations" noted by the DDS

11  medical advisor, but that he does not "find any medical support for

12  the additional visual limitations related to the right eye." Tr.

13  at 23. This statement is inconsistent with the medical evidence.

14  Moreover, Defendant is incorrect when she argues that Dr. Wechsler,

15  who stated that Plaintiff was blind in his right eye, "assessed no

16  visual limitation."

17      The ALJ noted that Plaintiff testified that he was not

18  precluded from work due to his visual impairment. Tr. at 23.

19  However, despite Plaintiff's feelings as to his capabilities, the

20  ALJ is required to pose a hypothetical to the VE which includes all

21  of Plaintiff's limitations supported by substantial evidence. The

22  blindness in Plaintiff's right eye may not have affected his

23  previous work as a carpenter, but it may affect the VE's

24  recommended jobs of "assembler of optical goods, 713687018," which

25  according to the Dictionary of Occupational Titles (DOT) requires

26  "[a]ttach[ing] nose pads and temple pieces to optical frames, using

27  handtools: Position[ing] parts in fixture to align screw holes.

28                                  27

Insert[ing] and tighten[ing] screws, using screwdriver," and "bench assembler, 706684022," which requires "position[ing] parts in specified relationship to each other, using hands, tweezers, or tongs."[4]  Therefore, on remand the ALJ shall pose a hypothetical to the VE incorporating all of Plaintiff's impairments and limitations that are supported by medical evidence in the record.

CONCLUSION

For the forgoing reasons, the Court GRANTS Plaintiff's motion to remand (Docket No. 13).

IT IS SO ORDERED.

Dated: 3/2/07



_____
CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California

---

[4] It is not clear what Plaintiff is quoting when he states that these jobs require "'frequent' near  acuity," and he cites the wrong DOT numbers for "bench assembler" and "optical assembler."  See Pl.'s Response to Def.'s Mot. 4:12-4:14.